UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALAINA MCVEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-07770 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ANAPLAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In November 2018, Alaina McVey filed suit in state court against her former employer, Anaplan, for pregnancy discrimination and harassment under the California Fair Employment and Housing Act (known by its acronym "FEHA"). A little more than a year later, Anaplan removed the case to federal court. Now, the Court faces a narrow question: did Anaplan file for removal on time? McVey moves to remand the case to state court, arguing that no, Anaplan missed the one-year removal window under 28 U.S.C. § 1446. R. 10, Mot. Remand at 6. In response, Anaplan argues that it had good reason to miss the one-year statutory window— namely, Anaplan contends that McVey originally added a non-diverse defendant in bad faith solely to defeat diversity jurisdiction, so the Court should ignore the one-year deadline in this case. For the reasons discussed below, the Court concludes that the bad-faith exception does not apply, so the motion to remand is granted.

## I. Background

Alaina McVey worked in a managerial role for Anaplan, a software company, over the course of 2017 and 2018. R. 1-1, Second Am. Compl. ¶¶ 23-24. In March 2018,

McVey learned that she was pregnant. *Id.* ¶ 37. McVey disclosed the pregnancy to one of her supervisors, David Tharp, in April 2018. *Id.* ¶ 39. The following month, Tharp informed McVey that she was being put on a performance plan. *Id.* ¶ 40. McVey alleges that, around this time, she also began to experience worse treatment compared to her co-workers. *Id.* ¶ 56. Things continued to go downhill from there, and in July 2018, McVey was fired. *Id.* ¶ 66.

After exhausting her administrative remedies, McVey filed two separate lawsuits in Illinois state court. First, on October 19, 2018, McVey filed a declaratory judgment action challenging the enforceability of the arbitration provision in her employment agreement. Mot. Remand, Exh. 1. McVey named as defendants Anaplan, Tharp, and three other employees from Anaplan's Human Resources Department. *Id.* At this initial point, there is no dispute that diversity jurisdiction did not apply to that case (at least on its face): although there was diversity between McVey (an Illinois citizen) and the majority of the defendants, including Anaplan, one of the defendants, Tharp, was also an Illinois citizen. *Id.* ¶¶ 1-4. Then, on November 13, 2018, McVey filed a separate lawsuit (the current case), this time under FEHA, against the same group of defendants. *See* Mot. Remand, Exh. 2. For the same reasons as those described above, the presence of Tharp defeated complete diversity, ostensibly precluding removal.

In December 2018, however, Anaplan removed the declaratory action—but not the FEHA action—to federal court. Mot. Remand, Exh. 3. In the notice of removal, Anaplan proffered that perhaps the individual defendants had been fraudulently

joined in the declaratory action, because the employment agreement was only between Anaplan and McVey. *Id*. ¶ 20. Moreover, Anaplan remarked that McVey was also suing the exact same group of individual defendants in a separate action (the FEHA action), so there was no reason to name them in the declaratory action as well. *Id*. ¶ 12. That same month, though, before the federal court could rule on the fraudulent joinder issue, McVey voluntarily dismissed the declaratory action after learning that Anaplan would not be seeking to compel arbitration. Mot. Remand, Exh. 4.

So, that just left the state-court FEHA action—which is the case now before this Court. In January 2019 (back when the case was still in state court), McVey filed a First Amended Complaint, and in March 2019, Anaplan moved to dismiss most of the claims. Mot. Remand, Exh. 5. In particular, Anaplan argued that McVey had improperly alleged "harassment" claims against the individual defendants (including Tharp) solely to defeat diversity jurisdiction. *Id*. ¶ 9. (Anaplan's reasoning, discussed in more detail below, was that FEHA only provides for individual liability for harassment claims, but not discrimination claims, so McVey improperly shoehorned her individual claims into the harassment theory even though she knew she would not be able to plead harassment against any of the individual defendants. *Id*.) In June 2019, the state court granted the motion to dismiss the individual harassment claims, but allowed McVey leave to re-plead. Mot. Remand, Exh. 6. In July 2019, McVey filed a Second Amended Complaint, Mot. Remand, Exh. 7, and that same month, Anaplan

3

again moved to dismiss the harassment claims against the individual defendants, Mot. Remand, Exh. 8.

On October 28, 2019, the state court once again dismissed the individual harassment claims, this time with prejudice. Mot. Remand, Exh. 10. The next day, McVey filed a motion for immediate appeal, challenging the dismissal of the individual defendants. Mot. Remand, Exh. 11. Meanwhile, the state court's order left Anaplan as the only remaining defendant. So, on November 25, 2019, with the only non-diverse defendant, Tharp, out of the picture, Anaplan finally removed this case to federal court on the basis of diversity jurisdiction. McVey filed a timely motion to remand shortly after that.

## II. Analysis

A defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court in the first place. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Where, as here, a defendant premises removal on diversity jurisdiction, the defendants must demonstrate complete diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). There is no dispute that complete diversity and the amount-in-controversy requirement have been met here.

In addition to satisfying the jurisdictional requirements outlined above, a defendant seeking removal must also satisfy the procedural requirements set forth

in 28 U.S.C. § 1446(b), including the statutory-timing requirements. Specifically, a notice of removal must be filed within 30 days of service of the initial pleading. 28 U.S.C. § 1446(b)(1). If the initial pleading does not state a removable case, then a notice of removal must be filed within 30 days of service of an order (or other paper) from which it can first be ascertained that the case is removable. 28 U.S.C. § 1446(b)(3). The exception to that, though, is that a case may not be removed on the basis of diversity jurisdiction under Section 1446(b)(3) "more than 1 year after commencement of the action, *unless the district court finds that the plaintiff has acted in bad faith* in order to prevent a defendant from removing the action." § 1446(c)(1) (emphasis added).

Here, Anaplan filed its notice of removal on November 25, 2019, which was within the 30-day window following the state court's dismissal with prejudice of the last remaining non-diverse defendant on October 29, 2019. The problem is that the state action commenced on November 13, 2018, and November 25, 2019 is more than one year after that. The sole issue now is whether the so-called bad faith exception to the one-year removal bar should apply in this case.

 Anaplan argues yes. R. 11, Def. Resp. Br. at 4. According to Anaplan, the only reason the case could not be removed earlier in the litigation was because of the presence of Tharp, the only non-diverse defendant. *Id*. And the only reason Tharp was even named as a defendant in the first place, Anaplan alleges, was in bad faith to defeat diversity jurisdiction, as evidenced by the fact that the state court dismissed the harassment claims against Tharp not once, but twice. According to Anaplan, this

5

suggests that McVey knew the claims against Tharp were never meritorious, and that she fraudulently joined him for the sole purpose of preventing removal. *Id*. at 9.

McVey, for her part, inexplicably ignores the existence of the bad-faith exception in 28 U.S.C. 1446(c)(1) and simply argues that Anaplan has unequivocally missed the one-year removal deadline. Mot. Remand at 6. (McVey also inexplicably cites to the pre-amendment version of the removal statute as well as caselaw from before the bad faith exception was inserted into the statutory text.) Relatedly, McVey points out that Anaplan could have easily avoided this situation by filing for removal sooner, either immediately after the October 2019 state-court order dismissing the individual defendants with prejudice, or even earlier than that on a fraudulent joinder theory. *Id*. at 7-8. Indeed, McVey reminds the Court that Anaplan actually did file for removal on a fraudulent joinder theory in the original October 2018 declaratory judgment action and then voluntarily dismissed that action, so now, their current removal effort must be barred by "res judicata" (in non-Latin terms, claim preclusion). *Id*. at 10-11. What's more, McVey argues that Anaplan, by filing multiple motions to dismiss the underlying November 2018 state-court action, has waived its right to object to litigating the case in state court. *Id*. at 11-12. Finally, although this is not explicitly framed in terms of bad faith, McVey also argues that its initial joinder of Tharp was completely legitimate as a legal matter, and the only reason the case became removeable was the involuntary (from the perspective of McVey) dismissal of Tharp by the state court. *Id*. at 9.

Putting aside for a moment McVey's arguments about waiver and what Anaplan should have done, it is clear that what this case really boils down to is whether Anaplan has proven the bad-faith exception. If yes, then the statutory one-year deadline will be excused, and the Court can at that point consider McVey's other arguments against removal.[1] If the answer is no, though, then there is no statutory basis to excuse Anaplan from the one-year removal window laid out in Section 1446(c)(1), and the case will have to be remanded to state court.

As a threshold matter, it is important to note that the bad-faith exception to the one-year timing requirement codified in Section 1446(c)(1) is *not* the same thing as the fraudulent joinder doctrine, which is codified nowhere in the removal statute and is instead a judicially created standard used to overcome a lack of complete diversity. In theory, there are ways to establish bad faith under Section 1446(c)(1) without resorting to the fraudulent joinder doctrine. For one, "bad faith" can be much broader than fraudulent joinder, which, as discussed below, is a high bar to meet. For example, the statute specifically contemplates a removing party invoking the bad-faith exception by showing that a "plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B). Similarly, one could conceive of a scenario where a plaintiff maintains a viable claim against a non-diverse defendant (in which case there is no fraudulent joinder), but *subjectively* has

---

[1] In that scenario, though, Anaplan would still only have 30 days after service of the October 28, 2019 order to remove, which, for purposes of this motion, would count as the order "from which it may first be ascertained that the case is … removable." 28 U.S.C. § 1446(b)(3).

no intention of litigating against that defendant and is instead solely trying to circumvent removal.

That being said, there could certainly be scenarios where bad faith and fraudulent joinder are congruent, and proof of fraudulent joinder simultaneously satisfies the requirements for bad faith. That is what is going on in this case, because Anaplan's bad-faith argument is essentially that McVey fraudulently joined Tharp, no more, no less. So, for purposes of this motion, the Court will analyze the bad-faith issue in terms of fraudulent joinder. But to be perfectly clear, this analysis is not meant to suggest that the bad-faith inquiry is necessarily congruent with or identical to the fraudulent joinder inquiry in every case. And it is important to keep in mind that, in typical fraudulent joinder cases, the allegedly fraudulent defendant is still in the litigation, and the question is whether a federal court should ignore the presence of that non-diverse defendant and exercise subject matter jurisdiction over the case anyway. In this case, though, the allegedly fraudulently joined defendant has already been dismissed, and the only question is whether the Court should rely on the fact that there might have been fraudulent joinder at a previous stage in the litigation in order to excuse the otherwise strict one-year timing requirement for removal. As a practical matter, though, the legal inquiry will end up being the same for purposes of this motion.

With those caveats out of the way, it is time to turn to fraudulent joinder. The fraudulent joinder doctrine provides that "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against

whom the plaintiff's claim has no chance of success." *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013) (cleaned up). A defendant can successfully invoke the fraudulent joinder doctrine by showing that "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). "In conducting this analysis, a district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success." *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *see also Poulos*, 959 F.2d at 73 ("[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?"). That is a much higher bar for defendants to meet than the typical motion to dismiss standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schur*, 577 F.3d at 764 (citing cases).

Here, McVey's claims against Tharp were brought under the California Fair Employment Housing Act, Cal. Gov't Code § 12940 *et seq*. The parties do not dispute that FEHA bars individual supervisor liability on discrimination claims, and only provides for individual liability on *harassment* claims. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 62-65 (1996). In short, harassment encapsulates "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Diaz v. Santa Monica Beach Hotel Corp.*, 2020 WL 4883820, at *2 (C.D. Cal. Aug. 20, 2020) (citing *Janken*,

9

46 Cal. App. 4th at 63). Harassment can include, for instance, "verbal epithets or derogatory comments, physical interference with freedom of movement, derogatory posters or cartoons, and unwanted sexual advances." *Id*. Discrimination, on the other hand, must "arise out of the performance of necessary personnel management duties. While harassment is not a type of conduct necessary to personnel management, making decisions is a type of conduct essential to personnel management." *Diaz*, 2020 WL 4883820, at *2 (citing *Janken*, 46 Cal. App. 4th at 63-64).

As Anaplan frames it, McVey has no viable harassment claim against Tharp, but that did not stop her from repackaging her discrimination claims as harassment claims for the sole purpose of keeping Tharp—the only non-diverse defendant—in the case to defeat removal. Def. Resp. Br. at 9. Specifically, Anaplan argues that all of McVey's allegations against Tharp "involve work functions" and fall under the umbrella of "business and personnel management"—in other words, squarely within the purview of discrimination claims, but not harassment claims. *Id*. at 8-9.

McVey, for her part, argues that she *did* state a harassment claim against Tharp and reminds the Court that she is actively appealing the state court's order dismissing the claim. Not only that, but the first time that the claims were dismissed, she attempted to re-plead them in a Second Amended Complaint. In other words, there is nothing in her behavior throughout the litigation that would suggest that she does not genuinely intend to litigate against Tharp. R. 12, Pl. Reply Br. at 6. And as for the substance of the harassment claims, McVey points to several allegations against Tharp that she argues do support a viable harassment claim: Tharp's alleged

criticisms of her work performance and appearance, including a "belittling" comment that she lacked "executive presence"; other comments by Tharp "belittling" her work performance in general; imposing monetary goals on McVey to coincide with when she would be on maternity leave; imposing disproportionate work requirements on McVey generally, and so on. Second Am. Compl. ¶ 98.

Given the demanding nature of the "no reasonable possibility" standard, the Court agrees with McVey. It might very well be true that a state court analyzing these claims would conclude that McVey has failed to state a claim for harassment against Tharp—and indeed, as Anaplan reminds us, that is exactly what the state court in this case did on two separate occasions. But to be fair, nowhere in either of the dismissal orders did the state court suggest that McVey's harassment claims were somehow frivolous or had no reasonable possibility of success. *See* Mot. Remand, Exh 6; Exh. 10. This is not to mention that the state appellate court might come out differently on this same issue. And in any event, the standard applied by the state court at the Rule 12(b)(6) dismissal stage is not the standard that is now before this Court. That is, McVey is not required to show that she has plausibly stated a harassment claim.

Rather, Anaplan is required to show that McVey has no reasonable possibility of succeeding on a harassment claim. Anaplan has not met that high bar. For example, to the extent that Anaplan bases its argument on the distinction between purely work functions on the one hand and purely harassing conduct on the other, the California Supreme Court has held that "official employment actions done in

furtherance of a supervisor's managerial role can also have a *secondary effect* of communicating a hostile message," and are therefore fair game for a harassment claim. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705 (2009) (emphasis added). What's more, FEHA employment harassment cases have been held to be "particularly unsuited to satisfying the removal standard, as they 'present issues of intent, and motive, and hostile working environment, issues not determinable on paper.'" *Diaz*, 2020 WL 4883820, at *2 (citing *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 286 (2009)). Here, too, the issues are much too fact-intensive for the Court to conclude, based on the pleadings alone, that McVey has no reasonable chance of stating a harassment claim against Tharp.

For all of these reasons, Anaplan has failed to show that McVey has no reasonable possibility of succeeding against Tharp on a harassment theory under FEHA, so the Court cannot conclude that McVey fraudulently joined Tharp at any point in the state court litigation. Other than fraudulent joinder, Anaplan does not point to any other basis for finding bad faith in this case. So, the bad-faith exception does not apply here, and the notice of removal is thus untimely under the one-year removal bar codified in 28 U.S.C. § 1446(c)(1). McVey's motion to remand is granted.

Given that the case will be remanded, there is no need to address in great detail any of McVey's other arguments for remand. For what it is worth, though, none are meritorious. For example, to the extent that McVey is trying to suggest that Anaplan somehow waived either its right to remove the case or its fraudulent joinder argument by only removing the earlier declaratory judgment action and waiting to remove the

FEHA action until now, that argument misses the mark. *See* Pl. Reply Br. at 13-14. The declaratory judgment action was based solely on the *arbitration* provision in the employment agreement between McVey and Anaplan. So Anaplan's fraudulent joinder argument in that case had to do with the fact that none of the individual defendants were even parties to the agreement at issue. That is a sensible argument, and it is a different argument from the one that Anaplan raises in this case. So Anaplan did not waive any of its arguments in the way that McVey claims.

Similarly, McVey asserts that Anaplan should have just removed the case earlier. For example, Anaplan could have removed the case on the basis of the purported fraudulent joinder right after the case was initially filed in November 2018. Mot. Remand at 13. Alternatively, Anaplan could have removed the case right after the state court's second dismissal order in October 2019 and still remained within the allowable one-year window set out in 28 U.S.C. § 1446(c)(1). *Id.* at 7. On the first point, that is neither here nor there. McVey does not cite any authority for the proposition that a federal court's analysis of the bad-faith timeliness exception should at all factor in a removing party's initial failure to raise a fraudulent joinder argument at the outset of a case. For one, as explained above, fraudulent joinder and bad faith are two separate doctrines, and not every bad-faith argument will invoke fraudulent joinder issues. Moreover, it is not clear that this is a rule that courts should be promoting; one could easily imagine such a rule pushing defendants to assert speculative or meritless fraudulent-joinder arguments for no reason other than

13

to preserve their later right to assert a bad-faith timeliness argument. McVey has pointed to nothing in the statutory text or caselaw to support such a proposition.

The second point is more sensible, but still not persuasive as a legal matter. From a purely practical perspective, it would have undoubtedly been more prudent for Anaplan to have filed its notice of removal sometime within the window after the state court's October 2019 dismissal order but before the one-year clock ran out the following month. That might have allowed the parties to avoid this entire round of remand briefing. True, Anaplan would be cutting itself short of the typical 30-day time allowance under 28 U.S.C. § 1446(b)(3), but the statutory text is clear. Section 1446(b)(3) only applies "*[e]xcept as provided in subsection (c).*" 28 U.S.C. § 1446(b)(3) (emphasis added). The natural reading of that provision is that the one-year time limit laid out in Section 1446(c)(1) trumps the usual 30-day allowance in Section 1446(b)(3).[2] The tricky thing about this unique fact pattern is that the 30-day window happens to coincide with the one-year window, and the question is whether the Court should somehow account for the fact that the removing party essentially failed to take advantage of the 15 or so days where removal would have been proper without resort to the bad-faith exception. Given that remand is proper on other, more clear, grounds, the Court will decline to decide that issue.

---

[2] Of course, if the bad-faith exception did end up applying, then Section 1446(c)(1) simply refers back to Section 1446(b)(3), and the typical 30-day removal window would be reinstated. That is meant to avoid the red herring situation highlighted by McVey, who suggests that if Tharp had been dismissed from the case six months before the one-year deadline, that Anaplan would have somehow had six months to file for removal on the basis of bad faith. *See* Pl. Reply Br. at 2. In contrast, Anaplan would have only had 30 days under 28 U.S.C. § 1446(b)(3), with or without a bad faith finding.

### III. Conclusion

For the reasons explained above, the motion to remand is granted. The case is remanded forthwith to the Circuit Court of Cook County. The status hearing of October 9, 2020 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2020